## WESTINGHOUSE AIR-BRAKE CO. *v.* CARPENTER.

*(Circuit Court, S. D. Iowa, E. D.* November, 1887.)

1. PATENTS FOR INVENTIONS—INFRINGEMENT—INJUNCTION—MODIFICATION.

The defendants, who had been enjoined from using and manufacturing a certain invention, applied for a modification of the order, that they might be permitted to give bond, and continue the use of the invention, and fill their contracts. *Held,* that the giving of the bond would not be an adequate protection to complainants' rights, and the motion was denied.

2. SAME.

One who was enjoined from using a patent sought for a modification of the injunction, so that by giving bond he might be permitted to continue the use of the invention, and assigned, as reason therefor, the erection of expensive works for its manufacture. *Held,* that a court of equity cannot come to the relief of such person when it appears that the works were erected subsequent to a notice of infringement.

3. SAME—INFRINGEMENT—INJUNCTION—EXPIRATION OF PATENT.

Upon motion of defendants in an action for infringement, the court was asked to limit the life of the injunction to a day when it was alleged the patent would expire. *Held,* that the time of such expiration being a point already in litigation, the question would more properly be brought up on motion to dissolve when such time should arrive.

4. SAME—INFRINGEMENT—EXPIRATION OF PATENT—INJUNCTION—RESTRAINT OF PUBLICATION.

In an action for infringement the defendants asked that complainants be restrained from publishing to the world the fact of the granting and issuance of an injunction restraining them from manufacturing and selling such patent. *Held,* that the court had no such authority.

*Nathl. French, Mr. Christy,* and *Mr. Bakewell,* for complainants.
*Banning & Banning,* for defendant.

SHIRAS, J., *(orally.)* I am ready to announce the conclusion I have reached on the motion submitted yesterday in the case of *Westinghouse Air-Brake Co.* v. *Carpenter.*

At an earlier day of the term this cause was submitted to the court upon an application for a preliminary injunction, based upon the bill and affidavits in support thereof, in which it was averred that complainants were the owners of a patent for an automatic air-coupler used in connection with air-brakes upon railroad cars, and that the defendant had and was infringing thereon, by using a similar coupling in connection with an electric apparatus manufactured by defendant. The court, Judge BREWER delivering the opinion, held that upon the showing made, both parties being heard upon the motion, the complainants were entitled to the relief sought, *i. e.,* to the issuance of a preliminary injunction restraining defendant from further infringement of complainants' patent until the final hearing of the case.

Upon the announcement of the conclusion reached upon the application for an injunction, the defendant filed a motion and affidavit asking the court to modify the order so made, so as to permit the defendant, by giving bond, to continue the use of the coupler in question until the final hearing, or, if such use could not be permitted to an unlimited extent, that defendant might be allowed to use so many of said couplers as might

v.32F.no.8—35

be necessary to enable defendant to carry out certain contracts he had made with three named railway companies, which contemplated the equipment of a fixed number of engines and cars with the electrical brake apparatus manufactured by defendant, used in connection with the air-coupler in question; these contracts having been entered into by defendant for the purpose of enabling the railway companies to put the apparatus so furnished to the practical test of every-day use upon freight and passenger trains.

It is also asked that the injunction, when issued, shall be limited to expire on the first day of May, 1888, for the reason that, in fact, complainants' patent will expire at that date. Upon the argument previously had in the cause, it was admitted by counsel for complainants that the patent would expire at that date, this admission being based upon the fact that a patent had been issued to complainants for the coupler in question in England, previous to the date of the patent obtained in the United States; that the English patent expires on the first of May next; and that this will terminate the life of the American patent, although upon its face it would seem to continue for four years or more. Counsel now claim, however, that this admission was made only for the purpose of the particular questions then being discussed; that this exact question is now pending before the supreme court, and it is hoped will be decided at its present session; and that it is not admitted finally that complainants' patent will terminate on the first of May next. Upon a motion of this character, the court ought not to determine when the patent will expire. When the first of May next arrives, it will be open to the defendant to then move for a dissolution of the injunction, upon the ground that the patent has expired, and the question can then be fairly presented, and by that time we may have the aid of a final decision on the point by the supreme court.

Defendant also asks that, although the writ of injunction be issued, the complainants be restrained by order of the court from publishing to the railroad world the fact of the granting and issuance of the injunction, in order that it may work as little injury as possible to the defendant in his efforts to bring before the public, and into general use, the improvements he claims to have made in railroad brakes. If there are cases in which a court would be justified in granting such an order, I do not think it can be done in the present case. It would certainly be the exercise of an extraordinary power for a court, after it has heard a cause in the usual open and public manner, and has openly and publicly declared its judgment upon the matter at issue, to then attempt to restrain the parties, or either of them, from making known the results of the hearing, especially touching a matter in which third parties may become interested. Even if the court should make the order asked, it would be futile, for the fact of the granting of the injunction has already been made public.

This brings us back to the main question presented by the motion now under consideration, and which has already been stated, to-wit: Is the court, under the showing made, justified in suspending the injunc-

tion ordered, and in permitting the defendant, upon giving bond, to continue in the manufacture and use of the coupler in question, either without limit, or to manufacture and use so many of the couplers as may be necessary in the carrying out of the contracts entered into between defendant and certain railway companies?

That in many instances courts of equity have permitted the defendant to continue the manufacture, use, or sale of a patented article, pending the hearing and final decision of the cause, upon giving bond or other security, is not questioned; but upon examination of these cases it will be found that some fact or ground existed justifying such action on the part of the court, aside from the mere convenience of defendant, and the case was of such a character that the giving of a bond afforded reasonable protection to the complainant. For instance, if the only or principal use made by the patentee of his patent-right is to sell territorial rights, or to demand and receive a royalty from licensees, then the court can, by providing for good security and proper accounting, reasonably protect the patentee from loss, even if the alleged infringer is permitted to continue in the use or manufacture of the patented article pending the hearing. So, also, if the patentee makes little or no use of his monopoly, or knowingly permits repeated infringements by third parties, or knowingly permits a third party to engage in the manufacture of the patented article, and without objection allows him to invest money and time in the business, and then seeks to put a stop to the infringement, the court, even though well satisfied that the patent is valid, and the defendant is an infringer, may refuse to grant an injunction until the final hearing, or may give the defendant the option of giving bond. In such cases the laches of the patentee are such that he is held to have forfeited the protection which the court would otherwise have extended to him.

When the present motion and affidavit were filed, it then seemed to the court that there might be merit in the application, and the order was made that notice of the motion should be given to counsel for complainants; but the court, having now heard counsel fully, is compelled to hold that the facts stated in the affidavit are not sufficient to justify the modification asked of the order already made.

The first act of infringement charged against defendant is, that at Burlington, Iowa, in May last, at a competitive trial of railroad brakes had at that place, the defendant made use of the patented coupler, having placed the same upon some 50 cars owned by the Illinois Central Railway Company, in connection with the electric apparatus manufactured by defendant. It appears that, as soon as complainants had knowledge of this use of the coupler by defendant, written notice was given to him that such use was an infringement, and that complainants would proceed against him if such use was continued; and on the twenty-fifth of May the present bill was filed, and service thereof had upon defendant. No laches in promptly moving for the protection of their rights can be imputed to complainants. The affidavit of defendant states, in general terms, that owing to the encouragement he received from the railway managers, in consequence of the results obtained at the Burlington trial or

exhibition, he has been induced to invest a large amount of money in putting up works and machinery at Ilion, New York, for the manufacture of his brake appliances, and that, if he is prevented from using the automatic coupler in question this outlay will be lost to him. It is not shown how much of this expenditure is for the purpose of the manufacture of the coupler as distinguished from the electrical apparatus used by defendant, but, however that may be, it is clear beyond question that this outlay was made by defendant after this suit was brought, and when he knew that the complainants were seeking to restrain him from using or manufacturing the coupler. Defendant therefore proceeded at his own peril. He cannot base an appeal to a court of equity for forbearance upon the ground that he made this outlay in good faith, and not supposing that he was infringing the rights of complainants.

Can the court sufficiently protect the rights of complainant by exacting a bond from defendant? It is shown that complainants do not sell to others the right to manufacture and sell their couplers. They have reserved wholly to themselves the right to manufacture and sell the same, and the principal use and value to complainants is in furnishing the same as part of the system of air-brakes manufactured by complainants. The couplers are not expected to be sold as a separate and independent device. If the court should now authorize the defendant to engage in the manufacture and sale of the couplers upon giving bond, this would, in effect, be compelling complainants to submit to a change in the use heretofore made of their patent, and would at once introduce a competitor, practically working under a license to use the patented coupler, when in fact complainants have never consented to grant licenses. Furthermore, if, upon the final hearing, complainants are adjudged entitled to a decree against defendant, how would it be possible for the court to assess the damages upon the bond so as to remunerate complainants for the actual injury caused them? The court cannot arbitrarily fix the value or price to be paid for the couplers actually used or sold by defendant, for it is the right of the patentee to determine the price that he will exact from others for such use; and unless the patentee has by sales made, or prices fixed, furnished the *data*, the court would be wholly without a guide in seeking to determine the price to be paid simply for the couplers actually used by defendant. But it is at once apparent that no valuation to be placed upon the couplers used would begin to make good the damage caused to complainants by permitting defendant to use the coupler in question, and thereby enabling him to at once become an active competitor in the business of furnishing brakes and automatic couplers for use upon the railways of the country. The damage thus caused to complainants would be serious and actual, and yet would be incapable of computation by legal rules. The damage being, for this reason, irreparable at law, it is the duty of the court of equity to protect the complainants against the same, and this can only be done by means of an injunction.

The same reasons exist against allowing defendant to carry out the contracts for equipping certain cars and engines to be used by three of

the railroads terminating at Chicago. These contracts cannot be carried out without at once creating a competition with complainants. How great the damage caused thereby to complainants cannot be foreseen, nor could the amount thereof be fixed in money. There is no way by which the court can bind the defendant to make good the actual loss or injury to complainants; for, as has already been said, there is no legal criterion by which such loss can be measured. If there was any feasible way discoverable by which the court could, with due regard to the rights of complainants, permit the defendant to carry out these contracts, the order would be made; but the more I have reflected upon the matter, the better I am satisfied that it cannot be done. I am therefore compelled to refuse the modifications asked, and the order for the injunction will stand as heretofore made.